IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

MYLAN INC., et al.,           )
                              )
              Plaintiffs,     )
                              )
v.                            )      Case No. 18-mc-209-DDC-TJJ
                              )
ANALYSIS GROUP, INC.,         )
                              )
              Defendant.      )

## **MEMORANDUM AND ORDER**

This matter is before the Court on Mylan Inc. and Mylan Specialty L.P.'s Motion to Compel Compliance with Subpoena Directed to Analysis Group, Inc. (ECF No. 2). Mylan Inc. and Mylan Specialty L.P. ("Mylan") seek an order requiring non-party Analysis Group, Inc. ("AG") to produce additional documents responsive to Mylan's subpoena served pursuant to Fed. R. Civ. P. 45.[1] AG opposes the motion. As set forth below, the Court will grant Mylan's motion in part and deny it in part.

I.  **Relevant Background**

On February 1, 2018, Mylan served a subpoena on AG pursuant to Fed. R. Civ. P. 45.[2] On February 16, 2018, AG's in-house counsel requested and Mylan agreed to a 30-day extension of time to respond to the subpoena. AG timely served its objections and responses and produced

---

[1] Mylan filed the motion in the District of Massachusetts, where its filing also included a motion to transfer the matter to this district. *Mylan Inc. v. Analysis Group, Inc.*, Case No. 1:18-mc-91153. Mylan's motion to transfer was granted and the case was docketed in this court on April 24, 2018 (ECF No. 7).

[2] ECF No. 3-3.

responsive documents. Counsel thereafter exchanged emails and on March 29, 2018, they spoke by telephone to confer about matters Mylan had indicated it wanted to discuss. Counsel continued to communicate electronically but resolved nothing other than that AG agreed to provide metadata underlying materials it had produced for use by Mylan's experts.[3] AG did not agree to Mylan filing a motion to compel in this district, so Mylan filed the motion in the District of Massachusetts. Ultimately, the motion was transferred to this district.

Mylan's and AG's counsel have communicated at length regarding their clients' respective positions on the subpoena. The Court finds they have complied with the requirements of D. Kan. R. 37.2.

## II. Summary of the Parties' Arguments

Mylan argues that AG (1) is improperly withholding documents responsive to Request No. 1, (2) has not sufficiently explained efforts it undertook to search for documents responsive to Request Nos. 2-16, and (3) improperly declines to produce documents other than those AG received from or sent to Sanofi. Mylan also contends AG has posed boilerplate objections that the Court should overrule.

AG contends it has complied with its obligations under Rule 45. According to AG, Mylan has not established that the additional documents it seeks are relevant, and Mylan ignores the protections afforded under the rule to AG's expert and confidential information. AG contends disclosure would cause injury which could be avoided if Mylan were to seek the documents from Sanofi.

## III. Legal Standard

---

[3] ECF No. 3-1.

In issuing a subpoena, a party must "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena."[4] Non-parties responding to Rule 45 subpoenas generally receive heightened protection from discovery abuses.[5]

Federal Rule of Civil Procedure 45 governs both motions to compel compliance with and motions to quash a subpoena served on a non-party. Under Rule 45(d)(2)(B), if the entity commanded to produce documents serves written objections to the subpoena, the serving party may seek compliance by filing a motion to compel production of the documents. If the non-party wishes to challenge the subpoena, it does so by filing a motion to quash. Rule 45(d)(3) sets forth circumstances under which a court must quash or modify a subpoena, including when the subpoena "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and when the subpoena "subjects a person to undue burden."[6] The rule also allows a court discretion to quash or modify a subpoena that requires the disclosure of a "trade secret or other confidential research, development, or commercial information,"[7] or "an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party."[8]

Resolution of a dispute regarding a Rule 45 subpoena involves the following shifting

---

[4] Fed. R. Civ. P. 45(d)(1).

[5] *XPO Logistics Freight, Inc. v. YRC, Inc.*, No. 16-mc-224-CM-TJJ, 2016 WL 6996275, at *3 (D. Kan. Nov. 30, 2016) (citing *Speed Trac Techs., Inc. v. Estes Exp. Lines, Inc.*, No. 08-212-KHV, 2008 WL 2309011, at *2 (D. Kan. June 3, 2008)).

[6] Fed. R. Civ. P. 45(d)(3)(A).

[7] Fed. R. Civ. P. 45(d)(3)(B)(i).

[8] Fed. R. Civ. P. 45(d)(3)(B)(ii).

burdens:

> The subpoenaing party must first show that its requests are relevant to its claims or defenses, within the meaning of Federal Rule of Civil Procedure 26(b)(1). Next, the burden shifts to the subpoenaed nonparty who must show that disclosure of the information is protected under Rule 45(d)(3)(A) or (B). If the subpoenaed nonparty claims the protections under Rule 45(d)(3)(B) or asserts that disclosure would subject it to undue burden under Rule 45(d)(3)(A), it must show that disclosure will cause it a 'clearly defined and serious injury.' *City of St. Petersburg v. Total Containment, Inc.*, Case No. 06-cv-20953, 2008 WL 1995298, at *2 (E.D. Pa. May 5, 2008) (undue burden under Rule 45(d)(3)(A)); *In re Mushroom Direct Purchaser Antitrust Litig.*, Case No. 06-cv-0620, 2012 WL 298480, at *5 (E.D. Pa. Jan. 31, 2012) (disclosure of trade secrets under Rule 45(d)(3)(b)(i)). 'This burden is particularly heavy to support a motion to quash as contrasted to some more limited protection such as a protective order.' *Frank Brunckhorst Co. v. Ihm*, Case No. 12-cv-0217, 2012 WL 5250399, at * 4 (E.D. Pa. Oct. 23, 2012).[9]

Trade secrets and similar confidential information are not afforded absolute privilege.[10] However, under Federal Rule of Civil Procedure 26, for good cause shown a court may "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including that "a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way."[11] A person seeking to resist disclosure must (1) establish that the information sought is a trade secret or other confidential research, development, or commercial information, and (2) demonstrate that its disclosure might be harmful.[12] If these requirements are met, the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the

---

[9] *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 239 (E.D. Pa. 2014).

[10] *MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007).

[11] Fed. R. Civ. P. 26(c)(1).

[12] *MGP*, 245 F.R.D. at 500.

4

action.[13]  Finally, the court must balance the need for the trade secrets against the claim of injury resulting from disclosure.[14]  If the requesting party demonstrates both relevancy and need, the trade secrets should be disclosed unless they are privileged or the subpoenas are unreasonable, oppressive, annoying, or embarrassing.[15]

**IV.     Analysis**

Mylan does not dispute that AG has produced documents responsive to Request No. 2, a far-reaching request that calls on AG to produce "[a]ll documents that [AG] created, produced, or prepared for Sanofi concerning the market that contains EAI Drug Devices."[16]  Similarly, AG does not dispute that it has not produced any documents in response to Request No. 1, which seeks "[a]ll documents constituting or relating to any actual or potential contract, agreement, proposal, negotiation, or commission of services between [AG] and Sanofi."[17]  As for the remaining fourteen requests, Mylan and AG agree that the responsive documents AG has produced include only items that AG can determine it sent to or received from Sanofi.  Mylan thus calls upon the Court to rule that AG (1) must produce documents responsive to Request No. 1; (2) may not withhold documents concerning its work for Sanofi that it did not receive from or send to Sanofi; and (3) must produce documents from a 2011 EAI pricing project for Sanofi or

---

[13] *Id*.

[14] *Centurion Indust., Inc. v. Warren Steurer & Assocs.*, 665 F.2d 323, 325 (10th Cir. 1981).

[15] *Id.* at 326.

[16] ECF No. 3-3 at 12.

[17] *Id.*

explain why it has not been able to locate the documents. Analysis of these issues begins with examining the relevancy of Mylan's requests.

### A. Relevancy

Mylan explains that it seeks discovery from AG to support its defense against Plaintiffs' claims that Mylan unlawfully excluded Auvi-Q from the market. Mylan's defense is that Auvi-Q failed because Sanofi was unable to compete on the merits, including price, and not because Mylan offered rebates on the EpiPen conditioned on favorable formulary placement. Because Sanofi had engaged AG, an economics consulting firm, to advise it on the competitive landscape before entering the market, Mylan seeks information from AG that it believes will help prove Sanofi's alleged failure to compete on the merits. The Court finds that by producing documents responsive to all but one of Mylan's requests, AG acknowledges relevancy to the extent the requests seek documents AG shared with Sanofi.

AG argues that the documents it produced – information, analyses, and recommendations it shared with Sanofi in the course of AG's work – will enable Mylan to achieve its stated goal of challenging decisions Sanofi made in reliance on or contrary to AG's consulting work. AG contends that Sanofi could not have relied upon or ignored information and analyses it did not receive, and that Mylan has not articulated any reason why information AG did not send to or receive from Sanofi is relevant.

Mylan asserts its ability to evaluate the quality of AGI's work for Sanofi depends in part on reviewing the materials on which AGI relied in reaching its conclusions. In addition, Mylan intends to use the information to learn what Sanofi's own consultant understood in 2011 about competition in the market, including the extent to which manufacturers used rebates to compete,

because that bears on Plaintiffs' claims that Mylan's rebates were anticompetitive. The Court finds that Mylan's Request Nos. 3 to 16 seek relevant information.

AG's argument regarding the relevancy of Request No. 1 is a bit different. AG has resisted producing documents "constituting or relating to any actual or potential contract, agreement, proposal, negotiation, or commission of services" between it and Sanofi, and faults Mylan for failing to demonstrate that Mylan cannot obtain from Sanofi all documents relevant to that request. The Court rejects AG's characterization of Mylan's burden. AG is not in a position to know what Sanofi has produced or will produce, nor whether a particular document may differ in version or have additions or omissions when coming from two different sources. Rule 45 does not require a party to conduct party discovery before seeking information from third parties, and relevancy analysis under Rule 26 does not distinguish between the two. Mylan's Request No. 1 also seeks relevant information.

### B. Whether the documents are protected under Rule 45(d)(3)(B)

Having found the requested documents relevant, the burden now shifts to AG to show that disclosure of the information is protected under Rule 45(d)(3)(B). AG argues that Mylan is seeking documents protected by both subdivisions of the rule. The Court considers each in turn.

#### 1. Unretained expert information

First, AG contends that Mylan's own description of the items it seeks acknowledges that the subpoena calls for AG to disclose an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.[18] Information Mylan wants AG to produce includes internal deliberations,

---

[18] *See* Fed. R. Civ. P. 45(d)(3)(B)(ii).

7

communications, predictions, assessments, recommendations, research and analysis, projections, estimations, draft advice, and analyses AG performed.[19] The issue is whether these items constitute facts relevant to Mylan's defense, in which case they are not shielded from production, or if instead they contain information resulting from AG's study as an expert, disclosure of which would cause injury to AG because it would be giving away its intellectual property for free.[20] Clearly any analysis AG performed for Sanofi would qualify as expert opinion that, because Mylan has not paid for it, is unretained and protected by Rule 45.

Rule 45 allows but does not require the Court to quash the subpoena insofar as it seeks unretained expert information. The rule provides two alternatives: modifying the subpoena[21] or ordering production under specified conditions if Mylan shows substantial need for the material that cannot otherwise be met without undue hardship and ensures AG will be reasonably compensated.[22] As the Court considers these alternatives, two pertinent considerations emerge. First, it is important to note that AG has produced documents responsive to Request Nos. 3 to 16, described as follows by in-house counsel:

> AG identified the relevant projects it had performed for Sanofi-Aventis ("Sanofi"), interviewed the employees who had worked on those projects and still work at AG, ascertained (with those employees' assistance) the location of those materials related to the analyses AG conducted for Sanofi that AG was able to confirm had been prepared for and sent to or received from Sanofi and that remained in AG's possession, custody or control, and produced those materials to [Mylan].[23]

---

[19] ECF No. 3 at 11, 12, 15, 16.

[20] *See United States ex rel. Willis v. SouthernCare*, Case No. CV410-124, 2015 WL 5604367, at *6-7 (S.D. Ga. Sept. 23, 2015).

[21] Fed. R. Civ. P. 45(d)(3)(B).

[22] Fed. R. Civ. P. 45(d)(3)(C).

[23] ECF No. 3-8 at 2.

8

Second, not every document request in the subpoena seeks information properly classified as analysis. Request No. 1 asks AG to produce contracts, agreements, proposals, negotiation, or commission of services between AG and Sanofi. Insofar as these documents contain factual statements, they are not protected as expert information.

The Court finds Mylan has not demonstrated substantial need for AG's expert information beyond what AG has provided, i.e., materials AG produced to or obtained from Sanofi related to the analyses AG conducted for Sanofi. Mylan argues that the fact-finder in this case will need to assess the credibility and reliability of AG's advice, which requires analysis of AG's underlying research, data, and methodology. The Court accepted the argument in determining the threshold issue of relevancy. But if Mylan is correct in stating the fact-finder's task, the determination will begin by assessing Sanofi's conduct and then comparing it to AG's advice. The credibility and reliability of that advice stems from what AG told Sanofi, and not from any other analysis AG might have performed along the way but ultimately determined in its expert judgment not to share with Sanofi. Sanofi's business judgment cannot have been based on information in AG's files that AG did not share with Sanofi.

In sum, the Court finds that because Mylan has not shown substantial need for documents responsive to Request Nos. 3 to 16 beyond those AG has produced and which are protected by Rule 45, the Court will deny the motion to compel AG to produce additional documents in response to those requests.

The factual statements called for by Request No. 1 are not protected as expert opinion information. Accordingly, the Court must determine whether AG may withhold documents responsive to this request as confidential.

### 2. Confidential research, development, or commercial information

AG also asserts that Mylan is asking for confidential research and commercial information protected from disclosure under Rule 45(d)(3)(B)(i). Specifically, AG points to Mylan's request for the information AG considered in formulating its opinions and advice, including all underlying data, research and materials that AG considered, as well as all the materials that informed AG's advice to Sanofi. AG states these materials were all generated through its own research efforts and include data AG obtained from confidential sources and from confidential surveys AG designed and performed. Disclosure would divulge AG's analytical methods and proprietary analysis, giving AG's competitors a significant advantage in bidding for, winning, and performing future work. To safeguard the confidentiality of such information, AG requires its employees and affiliates to execute confidentiality agreements and does not reveal the identity of confidential data sources to its own clients.[24]

The Court has determined that AG will not be required to produce additional documents in response to Request Nos. 3 to 16. But because the documents sought in Request No. 1 do not share the same characteristics, the Court must also consider whether they deserve protection under Rule 45(d)(3)(B)(i) as confidential information.

Documents that comprise trade secrets or other confidential research, development, or commercial information include "information, which if disclosed would cause substantial economic harm to the competitive position of the entity from whom the information was obtained."[25] Based on AG's representations, the Court accepts that the subpoena seeks

---

[24] ECF No. 15-1 at 3.

[25] *Nostrum Pharmaceuticals, LLC v. Dixit*, No. 15-mc-218-JWL-GLR, 2015 WL 6828182, at *2 (D. Kan. Nov. 6, 2015) (quoting *In re S3 LTD*, 242 B.R. 872, 876 (Bank. E.D. Va. 1999)).

confidential information and that disclosure might be harmful to AG.[26] The Court already has determined the relevancy of the requested information.[27] But because trade secrets and other similar confidential information do not enjoy absolute privilege, the Court must balance the need for the trade secrets against the claim of injury resulting from disclosure.[28] And while the Court is sensitive to the fact that the burden falls on a non-party, the Court concludes that Mylan's need outweighs the burden of disclosure. Moreover, the safeguard contemplated by Rule 26 to protect AG is in place in the form of the Third Amended Stipulated Protective Order, which specifically includes documents and information obtained from third parties.[29] Under the protective order, AG's competitors will not have access to AG's documents, and AG may designate a level of confidentiality that provides additional protection. Accordingly, the Court rejects AG's argument that the requested documents are shielded from discovery by virtue of Rule 45(d)(3)(B)(i).[30]

## V. Documents from 2011 EAI Pricing Project

Mylan argues the Court should compel AG to produce materials from a 2011 EAI pricing project or explain why it has been unable to locate those documents. Regarding production, no unique characteristics apply which require separate analysis; the Court's rulings herein apply.

---

[26] *See MGP Ingredients, Inc. v. Mars, Inc.*, 245 F.R.D. 497, 500 (D. Kan. 2007).

[27] *See id.*

[28] *Centurion Indust., Inc. v. Warren Steurer & Assocs.*¸ 665 F.2d 323, 325 (10th Cir. 1981).

[29] ECF No. 556 ¶15.

[30] Mylan argues that the Court should overrule AG's other objections as boilerplate, meaning they preserve nothing and waste the time and resources of the court and the parties. AG does not defend the objections. The additional objections lack substance and the Court rejects them.

Mylan argues the Court should compel AG to provide the details of the search it conducted so that Mylan can determine whether AG conducted a reasonable search for documents. In her affidavit, AG's in-house counsel details her efforts to locate the documents,[31] which the Court accepts. Other than to muse about AG's document preservation policy, Mylan does not suggest any reason to suspect AG and its counsel have failed in their obligations.[32] Absent a compelling reason, the Court declines to act on Mylan's suggestion. The Court's order with respect to Request Nos. 3 to 16 applies equally to documents related to the 2011 EAI Pricing Project.

## VI. Costs

AG asks the Court to order Mylan to pay the costs of compliance if the Court grants the motion to compel. AG has submitted the affidavit of in-house counsel showing the number of hours it has expended to date in responding to Mylan's subpoena, and stating more will be required if the Court grants Mylan's motion. The Court is cognizant that compliance with the subpoena requires AG to search for a variety of information. The Court's policy is to deny cost-shifting in the absence of evidence sufficient to demonstrate that compliance will impose undue expense on the producing party. "[T]he court will not deny a party access to relevant discovery because compliance inconveniences a nonparty or subjects it to some expense."[33] In this instance, because AG has provided detailed information describing the precise burdens and costs

---

[31] ECF No. 15-1 at 2.

[32] AG is not a party to this litigation, and therefore has been under no obligation to preserve documents for production to a party.

[33] *Booth v. Davis,* No. 10-4010, 2011 WL 2008284, at *7 (D. Kan. May 23, 2011) (citing *EEOC v. Citicorp Diners Club, Inc.*, 985 F.2d 1036, 1040 (10th Cir. 1993)).

it will incur to which Mylan offers no rejoinder except to opine that minimal additional work would be required to produce more documents, the Court finds it appropriate for Mylan to share in the cost of production. However, the Court will hold in abeyance its ruling on costs until AG has complied with this order and has submitted an affidavit setting forth the time and expense it has incurred in responding to the subpoena.

**IT IS HEREBY ORDERED** that Mylan Inc. and Mylan Specialty L.P.'s Motion to Compel Compliance with Subpoena Directed to Analysis Group, Inc. (ECF No. 2) is granted in part and denied in part as described herein. The motion is granted insofar as AG shall produce documents responsive to Request No. 1. The motion is denied in all other respects. AG shall produce documents responsive to the subpoena within **21 days** of the date of this order.

**IT IS FURTHER ORDERED** that if AG intends to pursue its request for costs in connection with responding to the subpoena, it shall submit an appropriate affidavit with supporting documents no later than **10 business days** after it has fully complied with this order.

**IT IS SO ORDERED.**

Dated this 27th day of August, 2018 in Kansas City, Kansas.

*[signature]*

Teresa J. James
U. S. Magistrate Judge