**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **MYLAN INC., et al.,** | |
| **Plaintiffs,** | |
| **v.** | **Case No. 18-mc-209-DDC-TJJ** |
| **ANALYSIS GROUP, INC.,** | |
| **Defendant.** | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the court on Mylan Inc. and Mylan Specialty L.P.'s ("Mylan")

Motion to Review the Magistrate Judge's Order of August 27, 2018 Denying in Part Mylan's

Motion to Compel Compliance with Subpoena Directed to Analysis Group, Inc. Docs. 26 & 28.

For reasons explained below, the court denies Mylan's Motion.

### I.      Factual and Procedural Background

On February 1, 2018, Mylan served a subpoena on Analysis Group, Inc. ("AG"), under

Federal Rule of Civil Procedure 45. Doc. 26-2. Mylan asserts that it issued this subpoena

seeking discovery from AG to support its defense in a related case, *In re EpiPen (Epinephrine*

*Injection, USP) Marketing, Sales Practices and Antitrust Litigation*, No. 17-2785-DDC-TJJ (D.

Kan.) ("the EpiPen MDL"). Specifically, Mylan contends that it seeks discovery from AG to

support its defense against plaintiff Sanofi-Aventis U.S. LLC's ("Sanofi") claim that Mylan

unlawfully excluded Auvi-Q—a rival product of the EpiPen once sold by Sanofi—from the

epinephrine auto-injector market. Mylan's defense is that the Auvi-Q product failed because

Sanofi couldn't compete with the EpiPen on the merits—including price—and not because

Mylan offered rebates on the EpiPen conditioned on favorable formulary placement.

Before Sanofi entered the epinephrine auto-injector market, it engaged AG, an economics consulting firm, to provide information and advice about that market. AG performed its consulting work for Sanofi in 2011 and 2012, before Sanofi launched Auvi-Q in 2013. Mylan asserts that the discovery it seeks from AG will help prove that Sanofi failed to compete on the merits—and not from any purported conduct by Mylan.

In response to the subpoena, AG produced responsive documents "that were prepared for and sent to or received from Sanofi," but it withheld internal documents that AG never provided to Sanofi. *See generally* Doc. 26-3. AG also withheld, it says, documents that it never "received" from Sanofi. *E.g.*, Doc. 26-3 at 6 (response to category No. 3). On April 18, 2018, Mylan filed a Motion to Compel Compliance with Subpoena Directed to Analysis Group. Doc. 2.[1] Among other things, Mylan's Motion moved to compel AG to produce this collection of "internal" documents that it had withheld from production.

On August 27, 2018, Magistrate Judge Teresa J. James granted Mylan's Motion to Compel in part and denied it in part. Doc. 24. Specifically, Judge James directed AG to produce documents responsive to Mylan's Request No. 1. *Id.* at 10–11, 13. Request No. 1 seeks "[a]ll documents constituting or relating to any actual or potential contract, agreement, proposal, negotiation, or commission of services between [AG] and Sanofi." Doc. 26-2 at 1. But Judge James declined to compel AG to produce "internal deliberations, communications, predictions, assessments, recommendations, research and analysis, projections, estimates, draft advice, and analyses AG performed." Doc. 24 at 7–8. Judge James determined that Rule 45(d)(3)(B)(ii) protects disclosure of the requested documents. This portion of Rule 45 allows a court to quash

---

[1] Mylan filed its Motion in the District of Massachusetts and also moved the court to transfer the matter to this district. *Mylan Inc. v. Analysis Grp., Inc.*, No. 18-mc-91153-FDS (D. Mass. Apr. 18, 2018), ECF No. 2. On April 20, 2018, the Massachusetts federal court transferred the case to the District of Kansas. Doc. 5.

or modify a subpoena if it requires "disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party." Judge James found that "any analysis AG preformed for Sanofi would qualify as expert opinion that, because Mylan has not paid for it, is unretained and protected by Rule 45." Doc. 24 at 8. Judge James also recognized that Rule 45 contains an exception to the protection of materials under Rule 45(d)(3)(B)(ii). This exception applies when the requesting party "shows a substantial need" for the discovery. Fed. R. Civ. P. 45(d)(3)(C)(i). Judge James held that Mylan had not demonstrated a substantial need for AG's expert materials beyond those AG already had agreed to produce (*i.e.*, materials sent to or received from Sanofi as part of its consulting work for Sanofi). Doc. 24 at 9.

Mylan's Motion for Review asserts that Judge James incorrectly applied Rule 45 in her August 27, 2018, Order. Thus, Mylan contends, Judge James's Order is "contrary to law." Doc. 26 at 1. And so, Mylan argues, the court should set aside Judge James's Order under Federal Rule of Civil Procedure 72(a). The court addresses and decides Mylan's request, below.

## II.     Legal Standard

Federal Rule of Civil Procedure 72(a) permits a party to present specific, written objections to a magistrate judge's order. When reviewing a magistrate judge's order deciding nondispositive pretrial matters, the district court applies a "clearly erroneous or contrary to law" standard of review. *See First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a). This clearly erroneous standard doesn't permit the district court to conduct a de novo review of the factual findings; instead, it must affirm a magistrate judge's order unless a full review of the evidence leaves it "with the definite and firm

conviction that a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464. In contrast,

"the contrary to law" standard permits the district court to conduct an independent review of the

magistrate judge's purely legal determinations. *Sprint Commc'ns Co. v. Vonage Holdings Corp.*,

500 F. Supp. 2d 1290, 1346 (D. Kan. 2007) (citations and internal quotation marks omitted). A

magistrate judge's order is contrary to law when it "fails to apply or misapplies relevant statutes,

case law or rules of procedure." *Walker v. Bd. of Cty. Comm'rs.*, No. 09-1316-MLB, 2011 WL

2790203, at *2 (D. Kan. July 14, 2011) (citing *Botta v. Barnhart*, 475 F. Supp. 2d 174, 185

(E.D.N.Y. 2007)).

### III.    Analysis

Mylan asserts that Judge James erred by holding that Rule 45(d)(3)(B)(ii) protects

disclosure of the documents that Mylan's subpoena demanded AG to produce. Mylan thus asks

the court to vacate that portion of Judge James's Order and thus compel AG to produce all

responsive documents resulting from its work for Sanofi regardless of whether AG had provided

the documents to or received them from Sanofi. Mylan asserts three principal arguments to

support its Motion. First, Mylan argues that the subpoenaed materials fall outside the scope of

Rule 45(d)(3)(B)(ii) because they were "requested by a party"—*i.e.*, Sanofi. Next, Mylan

contends that Rule 45(d)(3)(B)(ii) does not protect the subpoenaed materials because they

describe "specific occurrences in dispute." Finally, Mylan asserts that Judge James erred by

exercising her discretion to apply Rule 45(d)(3)(B)(ii) because she never considered certain

factors identified in the 1991 Advisory Committee's Notes to Rule 45. The court addresses each

of Mylan's arguments, in turn, below.

**A. Are the subpoenaed materials "requested by a party" within the meaning of Rule 45(d)(3)(B)(ii)?**

Rule 45(d)(3)(B)(ii) allows a court to quash or modify a subpoena if it requires "disclosing an unretained expert's opinion or information that . . . results from the expert's study *that was not requested by a party*." *Id.* (emphasis added). Mylan argues here that Rule 45(d)(3)(B)(ii) does not protect disclosure of the subpoenaed materials because they were "requested by a party"—that is, Sanofi. Sanofi, of course, is a party to the EpiPen MDL and it is the entity who asked AG to perform its consulting work.

Before it reaches the merits of this argument, the court considers whether Mylan has waived it. AG asserts that Mylan has waived this argument because it never presented it to Judge James. Indeed, the Tenth Circuit has held that "'[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.'" *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185 (10th Cir. 2011) (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996)). Mylan has not waived its argument. In its response to Mylan's Motion to Compel, AG asserted that Rule 45 protects disclosure of the subpoenaed documents. *See generally* Doc. 15. In its Reply, Mylan asserted: "AG[ ] cannot here rely on Rule 45(d)(3)(B)(ii)'s 'unretained expert' rule . . . to withhold documents, because AG[ ] witnessed and participated in the 'specific occurrences in dispute' while conducting a 'study . . . requested by a party'—i.e., Sanofi." Doc. 18 at 8 (quoting Rule 45(d)(3)(B)(ii)).

AG asserts that this one sentence isn't enough. Mylan, AG says, made no substantive argument or cited any case law to argue that the subpoenaed materials were "requested by a party." AG contends that Mylan raised this argument "in a perfunctory manner," and thus, the court should find it waived. *See United States v. Hardman*, 297 F.3d 1116, 1131 (10th Cir. 2002) ("Arguments raised in a perfunctory manner, such as in a footnote, are waived.").

Mylan did not assert this argument to Judge James in a perfunctory fashion. Mylan

argued to Judge James that none of the subpoenaed materials qualify for relief under the

language of Rule 45(d)(3)(B)(ii). Doc. 18 at 8–10. As part of its argument, Mylan asserted that

the subpoenaed materials do not come within the scope of the rule because a party—Sanofi—had

requested them. *Id.* at 8. The court thus finds that Mylan has preserved this issue for review.

Turning next to the substance of Mylan's objection, Mylan argues that Judge James erred

when she held that Rule 45(d)(3)(B)(ii) protects disclosure of the subpoenaed materials. This

conclusion contradicts, Mylan contends, the Rule's language because the materials at issue

"result[ ] from the [unretained] expert's study" and *were* "requested by a party." Neither Mylan

nor AG disputes that Rule 45(d)(3)(B)(ii) applies only to an "unretained expert's" materials.

And neither party argues that AG is not such an "unretained expert" in the EpiPen MDL. AG

asserts that no party to the EpiPen MDL has retained AG as a testifying or non-testifying expert

in that case. Mylan does not challenge this proposition.

The Advisory Committee's notes to Rule 45 explain that subsection (d)(3)(B)(ii)

"provides appropriate protection for the intellectual property of the non-party witness; it does not

apply to the expert retained by a party, whose information is subject to the provisions of Rule

26(b)(4)." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment. "The purpose of

this rule is to protect experts from being required to provide expert advice or assistance without

proper compensation." *Friedland v. TIC—The Indus. Co.*, No. 04-cv-01263-PSF-MEH, 2006

WL 2583113, at *2 (D. Colo. Sept. 5, 2006) (citing *In re Pub. Offering PLE Antitrust Litig.*, 233

F.R.D. 70, 76 (D. Mass. 2006)). As the Rule's Advisory Committee's notes explain, "[a]

growing problem has been the use of subpoenas to compel the giving of evidence and

information by unretained experts. Experts are not exempt from the duty to give evidence, . . .

but compulsion to give evidence may threaten the intellectual property of experts [who are] denied the opportunity to bargain for the value of their services." Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment.

Neither party cites a case with facts similar to the ones presented here. Sanofi, anticipating its launch of the rival Auvi-Q, hired AG to perform consulting work about the epinephrine auto-injector market. AG performed its work several years before the EpiPen MDL litigation commenced. Neither Sanofi nor Mylan has retained AG as an expert in the EpiPen MDL. But now, Mylan's subpoena tries to force AG to produce internal consulting work even though Mylan never paid AG for that work.

AG asserts that the Advisory Committee's reference in its note to Rule 26(b)(4)—a rule that applies to experts retained by parties to testify at trial or to provide consulting work about the specific pending or anticipated litigation—makes one thing clear about Rule 45(d)(3)(B)(ii): Its reference to "party" means a party to the litigation who has requested the unretained expert's opinion specifically for the pending litigation. AG argues that its opinions do not qualify as unretained expert opinion under that definition because Sanofi never asked AG to provide unretained expert opinions for the EpiPen MDL.

To support its reading of the Rule, AG cites *Presidio Components Inc. v. American Technical Ceramics Corp.*, No. 14-CV-2061-H, 2015 WL 12843187 (S.D. Cal. Oct. 5, 2015). In that case, the defendant served a subpoena on a third party whom the plaintiff had retained as an expert in an earlier lawsuit between the two parties. *Id.* at *1. Neither party had retained the expert in the current pending case, a second lawsuit between the same parties. *Id.* Thus, the California court reasoned, "it appears that [defendant] is attempting to use the subpoena at issue

7

to force [the expert] to act as an unpaid expert witness for [defendant]" in the pending litigation. *Id.* Exercising its discretion, the court quashed the subpoena under Rule 45(d)(3)(B)(ii).

*Presidio*'s facts are somewhat similar to the ones here. Like the *Presidio* plaintiff, Sanofi hired AG to perform consulting work about a different matter—one not involving the current litigation. Also like *Presidio*, no party to the present litigation—the EpiPen MDL—has retained AG as an expert in that current case. Even though the *Presidio* plaintiff previously had requested the expert to perform his study, the California federal court still held that Rule 45(d)(3)(B)(ii) protected the expert's materials because the defendant was using a subpoena to force the expert to act as an unpaid expert for the defendant in the second case. That resembles what Mylan is trying to do here.

Mylan tries to neutralize the value of *Presidio*'s precedent, pointing out one way that it differs from the facts here. Namely, Sanofi never retained AG as a litigation expert. Thus, Mylan argues, *Presidio* never considered whether the subpoena sought an "unretained expert's" materials that were "not requested by a party," as Rule 45(d)(3)(B)(ii) requires. This factual distinction makes no analytical difference. Both *Presidio* and this case involve a subpoena directed at someone who is an "unretained expert witness" in the present litigation. In both situations, a party to the current litigation previously had engaged the expert to provide opinions about another matter. The California federal court held that Rule 45(d)(3)(B)(ii) protected the subpoenaed information, even though the *Presidio* plaintiff previously had requested them.

*Presidio*'s holding makes sense, given the plain meaning of the words in Rule 45. This rule protects disclosure of an "unretained expert's" materials that "result[ ] from the [unretained] expert's study that was not requested by a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). Here, Sanofi never asked AG to perform any work as an "unretained expert" for this litigation. Instead,

Sanofi engaged AG to perform consulting work many years before the EpiPen MDL

commenced. At least two other courts have held that Rule 45 protects unretained expert opinions

even when a party to the current litigation previously had engaged the expert about another

matter. *See, e.g.*, *MedImmune, LLC v. PDL v. Biopharma, Inc.*, No. C08-05590 JF (HRL), 2010

WL 2794390, at *2 (N.D. Cal. July 15, 2010) (rejecting plaintiff's argument that Rule

45(d)(3)(B)(ii) did not apply to an unretained expert's declarations when "the work resulting in

those declarations was requested by [defendant]" in an earlier matter because "the fact remains

that the [unretained expert] has not been retained as an expert by any party *in this lawsuit*")

(emphasis added); *Intervet, Inc. v. Merial Ltd.*, No. 8:07CV194, 2007 WL 1797643, at *2 (D.

Neb. June 20, 2007) (holding Rule 45 protected opinions of an unretained expert whom a party

had retained as a consulting expert in an earlier lawsuit because, among other things, the expert

"[had] not been retained or designated as an expert in the pending litigation"). The court finds

the holdings of these cases persuasive, and thus follows them here.[2]

Mylan cites three cases trying to support its argument that Rule 45(d)(3)(B)(ii) does not

protect the subpoenaed materials because they previously were "requested by a party"—*i.e.*,

Sanofi. Each case is factually distinguishable, and thus the court does not apply them here. And,

importantly, no case cited by Mylan specifically analyzed whether the Rule protected the

subpoenaed materials because they "result[ed] from the expert's study that was not requested by

a party." Fed. R. Civ. P. 45(d)(3)(B)(ii). Instead, the analyses in Mylan's cases focused on

---

[2]     The parties do not cite any Tenth Circuit case law on this issue, and the court's research has not
located any Tenth Circuit authority either. The court predicts that the Tenth Circuit, if presented with this
question, would find the holdings of *Presidio* and the two other cited cases persuasive and apply them to
the facts presented here.

whether the subpoenaed materials satisfied a different part of the rule—the requirement that

material "describe specific occurrences in dispute." *Id.*[3]

For example, in *Natural Resources Defense Council v. Zinke*, the court held that Rule

45(d)(3)(B)(ii) did not apply to protect two government employees from "giving testimony about

the expert opinions they have already formed and provided to defendants in the course of their

work about the subject matter in this litigation." No. 05-cv-1207, 2018 WL 1899609, at *10

(E.D. Cal. Apr. 20, 2018). *Zinke* reasoned that the witnesses were "experts for Defendants

whose job is to provide expert advice on the subject relevant to this litigation." *Id.* And it

concluded that "[s]ome of these expert opinions are reflected in the documents that are part of

the administrative record and are already at issue in this case . . . ." Thus, *Zinke* held, the

government employees' proposed testimony "describes the specific occurrences in dispute" in

the lawsuit, and the government failed to meet "its burden in demonstrating that the limitation on

unretained expert testimony in Rule 45(d)(3)(B)(ii) is applicable." *Id.* at *9. Based on these

facts, *Zinke* concluded that the two government employees had provided unretained expert

opinions specifically for the pending litigation. And, because defendant employed them and

providing such expert opinions was part of their jobs, it was proper to infer that defendant had

requested the expert's opinions for that case. Those circumstances differ from the situation

presented here. Sanofi never asked AG to provide unretained expert opinions for or about the

EpiPen MDL. Instead, AG performed its consulting work for Sanofi many years ago—well

before the EpiPen MDL commenced.

---

[3]     The court analyzes this part of Rule 45(d)(3)(B)(ii) and its application to the facts here in the
following subsection. *See infra* Part III.B.

Next, Mylan relies on *Intervet, Inc. v. Merial Ltd.*.[4]  There, the court compelled a doctor

to testify "about the studies or work he performed at the request of [plaintiff] in furtherance of

the development of [plaintiff's] vaccine."  No. 4:08CV3042, 2008 WL 1837257, at *4 (D. Neb.

Apr. 22, 2008).  The court explained that plaintiff never had retained the doctor as an expert,[5]

and it reasoned that defendant was not seeking the doctor's testimony as an expert but instead as

a "fact witness."  *Id.*  That is not the situation presented by the current dispute in this case.

Mylan seeks internal documents showing how an expert, once engaged by Sanofi (albeit not as a

litigation expert), reached certain opinions about competition in the epinephrine auto-injector

market.  AG is more than a fact witness.  Indeed, Mylan never disputes that AG qualifies as an

"unretained expert" in the sense that Rule 45 uses that term.  Thus, the court refuses to compel

AG to produce the subpoenaed materials because they amount to more than information gathered

by a fact witness.

Finally, Mylan relies on *Brogren v. Pohlad*, a case where the court held that Rule

45(d)(3)(B)(ii) did not apply to protect investment advice that a subpoenaed party previously had

provided to a defendant before the lawsuit commenced.  No. 94-cv-6301, 1994 WL 654917, at

*2 (N.D. Ill. Nov. 14, 1994).  *Brogren* reasoned that plaintiff merely sought "opinions that [the

expert] has previously formed *and expressed*."  *Id.* (emphasis added).  And the court found that

---

[4]  As cited above, this same court quashed a subpoena under Rule 45(d)(3)(B)(ii) in a different but related case. *Intervet, Inc. v. Merial Ltd.*, No. 8:07CV194, 2007 WL 1797643, at *2 (D. Neb. June 20, 2007).  In that case, a party previously had retained the expert for another matter, but the court found that Rule 45(d)(3)(B)(ii) applied because the expert was not retained or designated in the pending case.  *Id.*

[5]  The court contrasted this expert with the one at issue in the different but related case—*Intervet, Inc.*, 2007 WL 1797643.  In that case, a party had retained the expert at issue but in a different and previous matter.  *Id.* at *2.  That fact made the unretained expert at issue in the present case different.  *See Intervet, Inc. v. Merial Ltd.*, 2008 WL 1837257, at *4 ("Unlike [the unretained expert in the different but related case] . . . [the unretained expert in the present case] has never been retained by [plaintiff] as an expert.").

11

the unretained expert was the "best witness to testify [about] what investment advice [the expert] rendered to [the party]." AG already produced to Mylan the opinions that it has expressed to Sanofi and the advice it rendered to Sanofi. This disclosure fulfills the results compelled by *Brogren*. But nothing in *Brogren* supports the result that Mylan tries to wring from the case, *i.e.*, that the expert must produce internal documents about its deliberative process in reaching those opinions. *Brogren* is inapposite to the facts here.

For all these reasons, the court concludes that Judge James properly held that the subpoenaed materials come within Rule 45(d)(3)(B)(ii). Mylan's subpoena tried to require disclosure of "an unretained expert's opinion or information that . . . results from the expert's study that was not requested by a party." Here, no party has requested AG to provide expert advice in the EpiPen MDL. Thus, although Sanofi previously engaged AG to provide it with certain advice, the subpoena seeks materials that "result[ ] from the expert's study" that was not requested by a party for the present litigation.

### B. Do the subpoenaed materials describe "specific occurrences in dispute" as Rule 45(d)(3)(B)(ii) requires?

Next, Mylan argues that Rule 45(d)(3)(B)(ii) does not protect the subpoenaed materials because they describe specific occurrences in dispute in the EpiPen MDL. Rule 45(d)(3)(B)(ii) only protects "an unretained expert's opinion or information that does *not* describe specific occurrences in dispute." Fed. R. Civ. P. 45(d)(3)(B)(ii) (emphasis added). Mylan contends that the subpoenaed materials *do* describe specific occurrences in dispute, and thus Rule 45 does not protect their disclosure.

To support this argument, Mylan cites cases holding that Rule 45(d)(3)(B)(ii) does not protect expert materials when they fully consist of facts. *See, e.g.*, *In re Domestic Drywall Antitrust Litig.*, 300 F.R.D. 234, 242 (E.D. Pa. 2014) (holding that subpoenaed materials were

12

subject to disclosure because they were "clearly of a factual nature that falls outside the protections of Rule 45(d)(3)(B)(ii)"); *Intervet, Inc. v. Merial Ltd.*, No. 4:08CV3042, 2008 WL 1837257, at *4 (D. Neb. Apr. 22, 2008) (holding that a defendant could depose an expert on topics for which he merely was a "fact witness"); *In re Pub. Offering PLE Antitrust Litig.*, 233 F.R.D. 70, 77 (D. Mass. 2006) ("Because the antitrust plaintiffs sought factual information from [a nonparty who had made certain statements in a published article about industry pricing practices that] describ[ed] specific events and occurrences in dispute in the antitrust litigation, such information is not shielded by Rule 45(d)(3)(B)(ii)."). Indeed, the Advisory Committee's notes to Rule 45 provide that a court's discretion when deciding to apply Rule 45(d)(3)(B)(ii) "should be informed by 'the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony . . . .'" Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976)).

Mylan argues that the internal documents sought by the contested subpoena "describe the specific occurrences in dispute" because they provide the basis for AG's research about the epinephrine auto-injector market and its resulting advice to Sanofi. AG disagrees. AG argues that Mylan's subpoena here does not seek factual material. Instead, AG contends, Mylan seeks opinions and information resulting from AG's expert work as Sanofi's consultant. AG thus reasons that Rule 45(d)(3)(B)(ii) protects such materials from the subpoena. The court agrees.

Judge James's ruling refused to compel AG to produce "internal deliberations, communications, predictions, assessments, recommendations, research and analysis, projections, estimates, draft advice, and analyses AG performed." Doc. 24 at 7–8. Although the court has located no case with facts exactly like the ones presented here, courts consistently have held that

Rule 45(d)(3)(B)(ii) protects information that results from an expert's study. This type of information is not purely factual information. To the contrary, it is information collected as part of the expert's unretained work. And Rule 45 protects the results of the expert's work. *See, e.g.*, *Daggett v. Scott*, No. 15-mc-00065-CMA-MJW, 2015 WL 3407314, at \*2 (D. Colo. May 26, 2015) (holding that Rule 45(d)(3)(B)(ii) does not protect discovery of facts but precludes discovery of an expert's "methodology, analysis, or expertise"); *Glaxosmithkline Consumer Healthcare, L.P. v. Merix Pharm. Corp.*, No. 2:05-mc-436-TS-DN, 2007 WL 1051759, at \*3 (D. Utah Apr. 2, 2007) (denying defendant's motion to compel testimony of an unretained expert because defendant merely sought testimony "about facts helpful to [its] theory of the case, but these [facts] came to [the expert's] attention by his [expert] study" and thus Rule 45(d)(3)(B)(ii) protected that testimony from disclosure).

For example, in *Daggett v. Scott*, the Colorado court explained that Rule 45(d)(3)(B)(ii) distinguishes between two types of material: "the expert's factual record [that] 'describe[s] specific occurrences in dispute' and therefore falls outside the protection of Rule 45(d)(3)(B)(ii); but the same expert's own analysis 'does not describe specific occurrences in dispute'; rather, it 'results from the expert's study' and is protected by the rule.'" 2015 WL 3407314, at \*2 (quoting Fed. R. Civ. P. 45(d)(3)(B)(ii)). The Colorado federal court thus held that a party could discover the factual basis for the expert's report but that it could not discover information about the expert's "methodology, analysis, or expertise."

The types of materials requested here—*i.e.*, internal deliberations, communications, predictions, assessments, recommendations, research and analysis, projections, estimates, draft advice, and analyses—are not ones containing merely factual information. Instead, these types of materials result from AG's expert work that Sanofi hired it to perform when it was

anticipating its launch of Auvi-Q and well before the EpiPen MDL commenced. Mylan cites no case showing that it is entitled to secure this type of material when it never has retained—or compensated—AG for that work. Judge James did not err by holding that Rule 45(d)(3)(B)(ii) protects disclosure of the materials that Mylan's motion seeks to compel AG to produce.

### C. Did Judge James err by not applying the factors from the Advisory Committee's Notes?

Last, Mylan argues that Judge James erred by failing to apply certain factors recited in Rule 45's Advisory Committee's notes when she exercised her discretion to apply that rule to the subpoenaed materials. The Advisory Committee's notes provide:

> [T]he district court's discretion in these matters *should be* informed by "[1] the degree to which the expert is being called because of his knowledge of facts relevant to the case rather than in order to give opinion testimony; [2] the difference between testifying to a previously formed or expressed opinion and forming a new one; [3] the possibility that, for other reasons, the witness is a unique expert; [4] the extent to which the calling party is able to show the unlikelihood that any comparable witness will willingly testify; and [5] the degree to which the witness is able to show that he has been oppressed by having continually to testify . . . ."

Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment (quoting *Kaufman v. Edelstein*, 539 F.2d 811, 822 (2d Cir. 1976)) (emphasis added).

AG again asserts that Mylan has waived this argument because it never made the argument to Judge James. *See, e.g.*, *ClearOne Commc'ns, Inc. v. Biamp Sys.*, 653 F.3d 1163, 1185 (10th Cir. 2011) (holding that "'[i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived'" (quoting *Marshall v. Chater*, 75 F.3d 1421, 1426–27 (10th Cir. 1996))). This time, the court agrees with AG's waiver argument. Mylan's briefing to Judge James never argued that she should apply the factors from the Advisory Committee's notes—much less that these factors favored Judge James exercising her discretion by declining to apply Rule 45(d)(3)(B)(ii) to the subpoenaed material. *See* Doc. 3

15

(Mylan's Memorandum in Support of its Motion to Compel); *see also* Docs. 18 & 21 (Mylan's Redacted and Sealed Reply to its Motion to Compel).[6] Because Mylan never asserted this argument to the Magistrate Judge, the court finds that Mylan has waived the opportunity to present it in its Objection here.

But, even if Mylan hadn't waived this argument, the Advisory Committee's notes never mandate courts to apply these factors. Instead, a court has the discretion to decide whether to apply Rule 45(d)(3)(B)(ii). *See* Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment (providing factors that a district court should consider when exercising "the district court's discretion" to apply Rule 45(d)(3)(B)(ii)); *see also SEC v. Merrill Scott & Assocs., Ltd.*, 600 F.3d 1262, 1271 (10th Cir. 2010) ("The district court has broad discretion over the control of discovery, and [the Tenth Circuit] will not set aside discovery rulings absent an abuse of that discretion.") (citations and internal quotation marks omitted). And the Advisory Committee's notes suggest that a court "should" consider the factors above when exercising that discretion. Fed. R. Civ. P. 45 advisory committee's note to 1991 amendment. But it never requires that a court *must* apply these factors. The court thus concludes that Judge James did not err by exercising her discretion to decide that Rule 45(d)(3)(B)(ii) protects the subpoenaed materials that Mylan seeks from AG.

## IV. Conclusion

For all these reasons, the court concludes that Judge James's ruling was not clearly erroneous or contrary to law. The court thus denies Mylan's objection to that Order.

---

6       Mylan correctly asserts that it cited the Rule's Advisory Committee's notes in its Reply. Doc. 21 at 9. Specifically, Mylan cited the Advisory Committee's notes on page 9 of its Reply. But Mylan's citation there directed Judge James to a completely different portion of the Advisory Committee's notes. Mylan never directed Judge James to the portion of the notes reciting the factors that Mylan now argues she failed to consider. Mylan simply never asserted the argument to Judge James that it seeks to assert here in its Objection.

**IT IS THEREFORE ORDERED BY THE COURT THAT** plaintiffs' Motion to Review the Magistrate Judge's Order of August 27, 2018 Denying in Part Mylan's Motion to Compel Compliance with Subpoena Directed to Analysis Group, Inc. (Docs. 26 & 28) is denied and plaintiffs' objection to Magistrate Judge James's August 27, 2018 Order (Doc. 24) is overruled.

**IT IS SO ORDERED.**

**Dated this 17th day of October, 2018, at Kansas City, Kansas.**

**s/ Daniel D. Crabtree**
**Daniel D. Crabtree**
**United States District Judge**